UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHAD PETITPAS,
    *Plaintiff*,

v.

ROBERT MARTIN, *et al.*,
    *Defendants*.

No. 3:17-cv-1912 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Chad Petitpas is a prisoner of the Connecticut Department of Correction. He has filed this lawsuit alleging that DOC officials have violated his constitutional rights by subjecting him to a higher risk classification on the grounds of his conviction for a sex offense. In accordance with my duty to conduct an initial screening review of Petitpas's claims, I will dismiss his Due Process and First Amendment claims but allow his Equal Protection claim to proceed. This ruling is without prejudice to defendants' filing of a motion to dismiss that articulates a rational basis for any unequal treatment of Petitpas.

**BACKGROUND**

Petitpas is serving a state prison sentence following his conviction on multiple counts of first-degree sexual assault and related charges. He was convicted on the basis of evidence showing that, when he was 28 years old in October 2006, he forced a 15-year-old girl to engage with him in oral and vaginal intercourse. *See State v. Petitpas*, 183 Conn. App. 442, 444 (2018); *see also State v. Petitpas*, 299 Conn. 99, 105 (2010) (describing trial evidence). He has filed this action against five officials of the Connecticut Department of Correction (DOC) in their official capacity: Robert Martin (warden of the Brooklyn Correctional Institution where Petitpas is confined), Scott Semple (DOC's commissioner), David Maiga (DOC's director of classification),

1

Thomas Hunt (director of DOC's Community Release Unit), and Elizabeth Tugie (a classification counselor supervisor).

Petitpas alleges that he is "a model inmate navigating the policies and unjust standards set forth by the Department of Correction for Sexual Offenders." Doc. #10 at 2. He claims that "[t]he current policies and standards for all Sexual Offenders significantly and blatantly infring[e] on my ability to earn the shortest sentence possible like every other class of offender has the opportunity to do." *Ibid.*

The complaint describes at some length how the DOC classifies inmates in terms of their "treatment needs" and "risk level," which in turn affects an inmate's ability to qualify for early release. *See also Anthony A. v. Comm'r*, 326 Conn. 668, 671-72 & n.3 (2017) (describing DOC's classification criteria); Doc. #1 at 17-21 (excerpts of DOC's inmate classification manual submitted as attachment to complaint). Inmates are entitled to regular reviews of their treatment needs and risk level scores, and if an inmate follows the terms of his Offender Accountability Plan (OAP), the inmate's overall score may be lowered so that he or she can qualify for community release. Doc. #10 at 3 (¶¶ 6-9); *see also* Doc. #1 at 17-21 (describing reclassification review process).

According to Petitpas, he and other sex offenders are classified as a "treatment needs" score of Level 3, and this means that his "risk level" score is also set at Level 3. Doc #10 at 4-5 (¶¶ 10-11). Petitpas claims that the only way that his overall score may be reduced below Level 3 is if he obtains a "favorable recommendation" from the prison warden and if this recommendation in turn is subject to further departmental review. *Id.* at 5-6 (¶ 16). Petitpas alleges that Warden Martin has never issued a favorable recommendation for a sex offender and "openly admits" that he would never write one. *Ibid.* Petitpas further alleges that, even if he were

to receive a favorable recommendation, the Community Release Unit which would receive the recommendation "literally does not have the authority to give an approval," because further approval must be sought "from both Population Management & Classification as well as the Commissioner of Corrections Scott Semple." *Id.* at 6 (¶ 16).

Petitpas attached to his initial complaint an excerpt of the DOC's classification manual. Doc. #1 at 17-21. The manual states in relevant part that "[a]ny inmate serving a sentence for a sex related offense . . . shall only be approved by the Commissioner or designee prior to being classified below Overall Risk Level 3. Only favorable recommendations by the Unit Administrator will be forwarded to the Director of Classification and Population Management." *Id.* at 21.

Petitpas alleges that in February 2016 he sent a letter to defendant Tugie regarding his upcoming classification review. Doc #10 at 2 (¶ 1). His letter asked that his overall risk level be reduced to a Level 2 so that he could take part in transitional programming and earn additional Risk Reduction Earned Credit ("RREC"). *Ibid.* Tugie assured Petitpas that "on February 15, 2017 he would be eligible for consideration of an Overall Risk Level reduction and that [he] would be given the same due consideration as all other offenders." *Id.* at 2 (¶ 2).

Pursuant to the DOC's classification manual, an inmate is notified if a level reduction is approved, and is "seen" if a review for an overall level reduction is denied. Doc. #1 at 17. On February 27, 2017, Petitpas was denied a risk level reduction, but he was not seen by corrections staff following the denial and did not become aware of the denial in time to appeal it. *Id.* at 2 (¶ 4) and 9 (¶ 31). According to Petitpas, he was "denied an overall level reduction without the required review and or any other process due." *Id.* at 2 (¶ 4).

Petitpas has filed on the docket an inmate request form that he sent to Warden Martin on November 8, 2017, requesting a "favorable recommendation" so that he might have his overall risk level reduced from Level 3 to Level 2. Doc. #9 at 2. Martin responded on November 14, 2017, that "your request has been denied due to the nature of your instant offense." *Ibid.* On December 18, 2017, Petitpas renewed his request, citing his favorable scores on college final exams and stating that "I pose no significant security or behavioral concerns in any of the seven cat[e]gories used to determine an inmate[']s Overall Risk Level." *Id.* at 4. Warden Martin responded that he had already answered Petitpas's request for a favorable recommendation. *Ibid.*

On December 20, 2017, prison officials again reviewed Petitpas for an overall risk level reduction but he was denied again. Doc 10. at 9 (¶ 32); *see also* Doc. #9 at 6 (classification review sheet dated December 27, 2017). Petitpas filed an internal appeal of the decision on January 3, 2018. Doc. #9 at 7-10.

Petitpas now alleges that "[t]he DOC and all named defendants have impl[e]mented policies, regulations and a process that significantly infringes on the plaintiff's ability to earn the shortest sentence possible which violates his Constitutional Rights to Due Process, Equal Protection, a State Created Liberty Interest and in violation of his First Amendment right which would prohibit unfair treatment and access to the court with a Class action." Doc. #10 at 11. He sues each of the defendants in their official capacities only, seeking injunctive relief "to demand whatever the DOC does to repair and balance the current Classification Manual or puts in place for the plaintiff and all similarly situated S.O's [sexual offenders] be obtainable within reason." *Ibid.* "Again, a 'favorable recommendation' has never bee[n] issued and no S.O. has ever been reduced in overall level with the signature of a Commissioner to become a level 2 or 1," and

4

"[w]ithout those two approvals, there is no alternative way for the plaintiff or any other S.O. to earn the shortest sentencing possible." *Ibid.*

## DISCUSSION

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555—56 (2007). It is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this rule of liberal interpretation, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Due Process Claim*

Petitpas characterizes his due process claim as a "stigma plus" claim. Doc. #10 at 8 (¶ 24). The Supreme Court and the Second Circuit alike have recognized that the Due Process Clause protects against the Government's use of a false stigma that alters a person's legal status or rights in a tangible manner. *See Vitek v. Jones*, 445 U.S. 480, 493 (1980); *Vega v. Lantz*, 596 F.3d 77, 81-82 (2d Cir. 2010). To prevail on a stigma-plus claim, a plaintiff must allege two distinct elements: "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false [the stigma],

5

and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's rights or status [the plus]." *Id.* at 81 (internal quotation marks and citations omitted).

Petitpas's stigma-plus claim fails the first requirement, because Petitpas does not and cannot dispute that he was convicted for a very serious sexual assault crime. *See id.* at 82 (rejecting stigma-plus claim by inmate challenging sex-offender classification because inmate "did not allege falsity" of information used for classification); *compare Anthony A. v. Comm'r*, 326 Conn. 668 (2017) (allowing stigma-plus due process claim to proceed where prisoner alleged wrongful classification as sex offender).[1]

Apart from a stigma-plus due process claim, the complaint does not allege facts that would suffice to state any other type of due process claim. It does not, for example, allege facts or state law protections that give rise to any constitutional liberty interest to be free from a higher risk classification on the basis of his conviction for a forcible sex assault crime and his classification as a sex offender. Indeed, "[i]t is well settled that prisoners generally do not have a protected liberty interest in classifications that impact their eligibility to participate in rehabilitative programs," and "Connecticut has not granted inmates, by regulation or statute, a protected interest in their security classification," because "the matter is committed to the discretion of the Commissioner of Corrections." *Taylor v. Levesque,* 246 F. App'x 772, 774 (2d Cir. 2007); *see also Green v. Martin*, 224 F. Supp. 3d 154, 177 (D. Conn. 2016) (same); *Vega v. Rell*, 2012 WL 1298678, at *2 (D. Conn. 2012) (noting that inmates have "no inherent liberty

---

[1] The complaint cites *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997), which states in part that "[w]e can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender." *Id.* at 829. Even so, the rule in the Second Circuit as established in *Vega* is that the stigmatizing label must be false in order to sustain a stigma-plus due process claim, and Petitpas does not allege that he has been falsely labeled as a sex offender for purposes of the inmate classification process. *See also Neal*, 131 F.3d at 831 (rejecting inmate's due process claim on grounds that "[a]n inmate who has been convicted of a sex crime in a prior adversarial setting … has received the minimum protections required by due process" and "[p]rison officials need do no more than notify such an inmate that he has been classified as a sex offender because of his prior conviction for a sex crime").

interest in receiving good time credit" and that the Connecticut law that creates Risk Reduction Earned Credits does not create a liberty interest "because the commissioner is not required to make RREC available to all inmates; he has the discretion to make it available"); *Green v. Comm'r*, 184 Conn. App. 76 (2018) (same).

Moreover, even assuming the deprivation of a liberty interest, Petitpas does not allege facts to show that he was deprived of the process that he was due. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*) (due process claim requires deprivation of property or liberty interest as well as a showing that the procedures used to deprive the interest were insufficient).For example, as to the most recent classification review in December 2017, Petitpas does not allege that he was not given notice of the classification review process, or that he was not given an opportunity to be heard with respect to why he believes that he should receive a lower risk score, or that he was not given notice of the adverse determination, or that he was not given an opportunity to appeal from the adverse determination. *See* Doc. #9 (documents showing Petitpas's opportunity to participate in review process). Accordingly, Petitpas has not alleged facts that give rise to plausible grounds for relief under the Due Process Clause.[2]

### *First Amendment Claim*

Petitpas alleges that Warden Martin violated his rights under the First Amendment. According to Petitpas, his court "complaint was written and intended to be a class action suit describing various hardships suffered by several other S.O. inmates," but "Warden Martin maliciously transferred one inmate and told three other inmates if they took part in teaming up up to challenge this policy he would have them transferred in one direction and their property

---

[2] To the extent that Petitpas complains about his lack of notice with respect to the earlier classification review in February 2017, *see* Doc. #10 at 9 (¶ 31), this is mooted by the later review that took place in December 2017 and by the nature of Petitpas's claim that is limited to a prayer for injunctive relief against the defendants in their official capacity.

7

transferred in another direction." Doc. #10 at 9 (¶ 31). On this basis, Petitpas alleges that there was a "violation of his First Amendment Right which would prohibit unfair treatment and access to the court with a Class Action." *Id.* at 11.

The Supreme Court has long recognized a constitutional right of access to the courts, notwithstanding that the right's precise source in the Constitution remains uncertain. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002); *see also Blake v. Dowe*, 36 F. Supp. 3d 271, 276–77 (D. Conn. 2014). Notwithstanding the restrictions of a prison environment, prisoners—like any other citizens—have a constitutional right of access to the courts that prison officials may not unreasonably obstruct. *See Tuttle v. Semple,* 2018 WL 1168583, at *3 (D. Conn. 2018).

It is self-evident from the filing of the complaint in this action that Petitpas himself was not prevented or impeded by Warden Martin or anyone else from filing a court action to challenge his risk classification. Unable to claim that his own right to court access has been impeded, Petitpas alleges instead that Warden Martin obstructed *other* inmates by taking steps to deter them from joining with Petitpas to file a class action. But Petitpas has no right to assert the First Amendment rights of other prisoners or, for that matter, to have them joined as co-parties for a *pro se* class action complaint. *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (litigant generally has no standing to claim violations of rights of third parties); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (no right of *pro se* litigant to represent third parties). Accordingly, Petitpas has not alleged plausible grounds for relief under the First Amendment.

*Equal Protection Claim*

Petitpas alleges that sex offenders are the only class of prisoners who are subject to a procedure that requires them to receive a "favorable recommendation" by the Unit Administrator, the Director of Population and Classification Management, and the Commissioner in order to receive a risk level reduction. According to Petitpas, even prisoners convicted of serious felonies such as murder, robbery, or assault do not need to jump through the same procedural hoops as sex offenders, and he claims that this disparate treatment of sex offenders violates the Equal Protection Clause. *See* Doc. #10 at 8 (¶ 25).[3]

The Equal Protection Clause protects individuals from arbitrary or invidious discrimination. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985). But, absent a classification that burdens a suspect class or the exercise of a fundamental right, a government classification among different groups of persons does not run afoul of the Equal Protection Clause if there is any rational basis to support it. *See Heller v. Doe*, 509 U.S. 312, 319-20 (1993).

For purposes of rational-basis review, the Constitution "does not demand ... that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992). Instead, a court need only ascertain "that a purpose may conceivably or may reasonably have been the purpose and policy of the relevant governmental decisionmaker." *Ibid.* In short, a court must uphold a classification "'if there is any reasonably conceivable state of facts that could provide a rational

---

[3] To the extent that Petitpas complains he has been treated less favorably than an "assaultist," Doc. #10 at 8 (¶ 25), this claim overlooks that Petitpas was convicted on multiple counts of sexual assault. *See Petitpas*, 299 Conn. at 100.

basis for the classification.'" *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 92 (2d Cir. 2017) (quoting *Heller*, 509 U.S. at 320).

It is apparent that Petitpas's claim is subject to rational basis review. Neither prisoners in general nor sex offenders in particular are a suspect class. *See Graziano v. Pataki*, 689 F.3d 110, 117 (2d Cir. 2012). Applying rational basis review, the Second Circuit has affirmed dismissal of a complaint that challenged an "unofficial policy" of the New York State Division of Parole to deny parole to violent felony offenders: "Here, the rational basis for a distinction in parole determinations between violent and nonviolent offenders is self-evident: preventing the early release of potentially violent inmates who may pose a greater danger to the safety of others. Plaintiffs have therefore failed to state an equal protection claim." *Ibid.*

In light of Petitpas's conviction for first-degree forcible sexual assault upon a 15-year-old girl, there may be conceivably rational grounds for DOC to treat Petitpas differently from offenders who have been convicted of serious non-sex crimes. *See Roe v. Marcotte*, 193 F.3d 72, 82 (2d Cir. 1999) (rejecting Equal Protection challenge to statute requiring sex offenders to furnish DNA despite argument that it "impermissibly distinguishes between individuals convicted of crimes characterized as sexual offenses and those convicted of other violent offenses").

On the scant record before me, however, I do not have sufficient information to decide if there are rational reasons that would conceivably justify treating Petitpas differently from other offenders who have been convicted of non-sex-related crimes (especially murder or robbery or other very serious crimes, to the extent that such offenders are actually treated more favorably). Accordingly, I conclude that the Equal Protection claim should proceed and without prejudice to defendants' filing of a motion to dismiss (1) that more fully describes the DOC risk classification

policy as it applies to sex offenders, (2) that delineates the specific manner in which the DOC subjects sex offenders to different risk classification than non-sex offenders (including non-sex offenders convicted for serious violent felony crimes), and (3) that states any grounds that in fact support or would rationally support the policy and distinctions it draws as applied to Petitpas in this case.

## CONCLUSION

Plaintiff's Due Process and First Amendment claims are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1). The case shall proceed solely as to plaintiff's Equal Protection claim without prejudice to defendants' filing of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

The Court enters the following orders:

(1) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on defendants Martin, Semple, Maiga, Hunt, and Tugie in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(2) **The Clerk shall** send plaintiff a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim

recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9) Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the court.

It is so ordered.

Dated at New Haven this 15th day of October 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer

United States District Judge